IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2002 Session

## MID-AMERICA APARTMENT COMMUNITIES, L.P., a Tennessee Limited Partnership v. COUNTRY WALK PARTNERS, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0240-03     Floyd Peete, Jr., Chancellor, by interchange**

---

**No. W2002-00032-COA-R3-CV - Filed December 31, 2002**

---

Plaintiff filed suit for damages to ponds on its property caused by silt flowing from upstream property under development by Defendants. The trial court found that the suit was timed barred by the three year statute of limitations applicable to causes of actions for injuries to property and accordingly entered judgment in favor of the defendants. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Henry L. Klein, Memphis, Tennessee, for the appellant, Mid-America Apartment Communities, L.P.

J. Cecil McWhirter and Geoffrey Gaia, Memphis, Tennessee, for the appellee, Country Walk Partners.

Steven R. Regenwether, Memphis, Tennessee, for the appellee, Paragon Properties, LLC.

Mark W. Raines and Jay M. Atkins, Memphis, Tennessee, for the appellee, Acuff Enterprises, Inc. d/b/a Scott Contractors and Scott Contractors, Inc.

**OPINION**

This dispute arises from damages to ponds fed by the Fletcher Creek Tributary in Shelby County on Mid-America Apartment Communities' ("Mid-America") Greenbrook Apartment property ("the property"). The siltation was caused by the development of upstream properties by Country Walk Partners, Paragon Properties, LLC, and Acuff Enterprises, Inc. d/b/a Scott Contractors (collectively referred to as "Defendants") from early 1993 through 1999. Mid-America began to experience problems with siltation of the ponds shortly after development work began. In 1993, the

Defendants incurred the cost for the ponds to be dredged under a state permit. The siltation problems recurred, however, and Mid-America reconfigured the ponds so that they were no longer fed by the tributary.

In 1994, the Tennessee Department of Environment and Conservation ("the Department") investigated the development area and notified Country Walk that it was in violation of its NPDES permit. The Department advised Country Walk that it was required to take corrective action to control the migration of silt from the development area. Country Walk was repeatedly notified of permit violations and violations of the Tennessee Water Quality Control Act from 1994 through 1998. The Department determined that the siltation of the ponds on Mid-America's property was caused by the construction methods used by the Defendants, which did not include adequate sediment control procedures. As a result of the lack of proper erosion control methods, rain would cause the silt to flow downstream from the development area into Mid-America's ponds.

Mid-America filed its complaint in chancery court on March 16, 1998, alleging nuisance and negligence and seeking to recover as damages the costs of redesigning the ponds. On October 23, 2000, the chancellor referred the cause to Edward Hargraves, a professional engineer, as special master to make findings of fact on specific issues, including when the siltation began, the cause of the siltation, the amount of damages, and the allocation of fault among the parties. Following extensive hearings and completion of the special master's report, in October of 2001 the Defendants moved for dismissal. Defendants moved for judgment based on the three year statute of limitations for tort actions causing injuries to property, or, in the alternative, for adoption of the report of the special master. The trial court awarded final judgment to the Defendants based on the statute of limitations and further adopted the findings of the special master. Mid-America now appeals to this Court, contending that the nuisance created by the Defendants was caused by improper erosion control, was recurring and temporary in nature, and that its cause of action accordingly was not barred by the three year limitations period. Mid-America further submits that although the trial court did not reach the issue of damages, it should recover the cost of reconfiguring the ponds or, in the alternative, the cost to remove the silt from the ponds, and that damages should be allocated proportionately as determined by the special master.

### *Issues Presented*

The issues presented by Mid-America for our review are:

(I)     Whether the trial court erred in finding that the cause was time barred by the statute of limitations.

     (A)     Whether the defendants created a nuisance affecting plaintiff's property

     (B)     If so, whether the nuisance was permanent or temporary.

(II)     Whether plaintiff is entitled to damages as a result of siltation of the ponds on its property.

(A)     If so, the amount of damages and the allocation of same.

### *Standard of Review*

The order of the trial court awards "final judgment" to the Defendants and confirms and adopts the findings of the special master. We regard this as an award of summary judgment and review it accordingly. Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts of the cause of action and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). Mere assertions that the non-moving party has no evidence does not suffice to entitle the movant to summary judgment. *McCarley*, 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the non-moving party's claim. *Id.* If the moving party can demonstrate that the non-moving party will not be able to carry its burden of proof at trial on an essential element of its case, summary judgment is appropriate. *Id.*

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts or that the moving party is not entitled to summary judgment as a matter of law. *Id.*; *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The nonmoving party cannot merely rely on the pleadings, but must demonstrate that essential elements of a claim exist by: 1) pointing to evidence that creates a factual dispute; 2) re-enforcing evidence challenged by the moving party; 3) offering additional evidence which establishes a material dispute; 4) submitting a Tenn. R. Civ. P. 56.06 affidavit explaining the need for additional time for discovery. *McCarley*, 960 S.W.2d at 588.

We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). In determining whether to award summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of the nonmoving party. *Staples*, 15 S.W.3d at 89. Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.* If there is any doubt about whether a genuine issue exists, summary judgment should not be awarded. *McCarley*, 960 S.W.2d at 588.

In general, concurrent findings of the special master and trial court are considered conclusive and are binding on the appellate courts. Tenn. Code Ann. § 27-1-113. Such concurrence is not conclusive, however, where (1) it is upon an issue not properly referred to a special master; (2) it is based upon an error of law; (3) it is upon a question of law or mixed fact and law; (4) it is not supported by any material evidence. *Staggs v. Herff Motor Co.*, 390 S.W.2d 245, 251 (Tenn. 1965);

*In re Estate of Wallace*, 829 S.W.2d 696, 700 (Tenn. Ct. App. 1992). Issues of law and mixed questions of law and fact are subject to a *de novo* review by this Court, with no presumption of correctness for the determinations of the trial court. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Judgment Based on Statute of Limitations*

A nuisance results from that which "annoys or disturbs the free use of one's property, or which renders its ordinary use of physical occupation uncomfortable." *Caldwell v. Knox Concrete Prods., Inc.*, 391 S.W.2d 5, 9 (Tenn. Ct. App. 1964). A cause of action arising from a permanent nuisance is subject to the three year limitations period for tort actions for injuries to personal or real property imposed by Tenn. Code Ann. § 28-3-105. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 540 n.6 (Tenn. 1998). The limitations period does not bar a cause of action arising from a temporary and continuing nuisance, however, as the continuation of the nuisance is a new offense entitling plaintiffs to recovery. *Id.* Plaintiffs asserting a temporary nuisance claim may recover for damages that occur within the three year limitations period for injuries to property. *Id.*

A permanent nuisance is one which is presumed to continue indefinitely. *Caldwell*, 391 S.W.2d at 11. It is one which at once produces all of the damage which will result from it. *Id.* The three year limitations period applicable to causes arising from a permanent nuisance begins to run from the time the creation of the nuisance is complete. *Id.* A temporary nuisance is one that can be corrected by the expenditure of labor or money. *Id.* at 12. Whether the nuisance can be abated by the expenditure of labor or money is a question to be determined by the trier of fact. *Id.* at 11.

After describing the process by which developers and contractors must act together to ensure sufficient erosion measures are undertaken, the special master in this case apportioned approximately seventy-five percent of the responsibility for damages to Mid-America's property to the Defendants. If the Court were to interpret this apportionment as a finding of negligence on the part of the Defendants, then the resulting nuisance would be temporary in nature. *See Caldwell v. Knox Concrete Prods., Inc.*, 391 S.W.2d 5, 12 (Tenn. 1964) (holding that where a nuisance is created by negligence, "it is a wrong within the power of the defendant to correct by operating in a non negligent manner and is, therefore, a temporary nuisance."). However, not only those nuisances resulting from negligent operations are temporary. *Id.* As noted above, the test for whether a nuisance is temporary is whether it could have been corrected with the expenditure of labor or money. *Id.* Thus even assuming the special master's report does not indicate negligence on the part of the Defendants, if the siltation of the ponds on Mid-America's property could have been avoided by the expenditure of money or labor, the nuisance was a temporary one and summary judgment for the Defendants based on the statute of limitations would not be appropriate.

The special master reported, *inter alia*:

> The process of land development is a joint effort involving three distinct entities. Those entities in these particular issues are the Developer, in this case,

Country Walk Partners, a joint venture; the Contractor, Scott Contractors, Inc.; and thirdly, the homebuilder, Paragon Properties, LLC.

These three entities by necessity, must cooperate and coordinate with each other to have a successful land development project. . . . Lack of communication can result in instances such [as] has been associated with this case and the accumulation of silt in the lakes within the Greenbrook Apartments Complex.

. . . a strong communication link is required . . . to ensure that erosion control systems are being implemented as practical and necessary to prevent soil erosion. It is a joint effort that requires constant vigil to ensure that the erosion control devices are installed correctly, and that they are properly maintained throughout the construction period.

As noted above, the special master then attributed seventy-five percent of the responsibility for the siltation of the ponds to the Defendants.

We are satisfied that the report of the special master as concurred in by the trial court indicates that the nuisance in this case could have been abated with the expenditure of labor and/or money by the Defendants. As a matter of law, the nuisance created was therefore temporary in nature. The award of summary judgment based on the statute of limitations applicable to permanent nuisances is therefore an error in the application of the law to these factual findings. We accordingly reverse summary judgment based on the statute of limitations.

### The Measure of Damages

In addition to awarding summary judgment to the Defendants based on the statute of limitations, the trial court adopted the findings of the special master, which included a determination of the measure of damages. We consider this an alternate determination that, should the nuisance be deemed temporary and the action therefore not time barred, the measure of damages should be as determined by the special master.

The special master determined that the measure of damages should be based on the cost of removing the silt from the ponds, rather than the substantially higher cost of reconfiguring the ponds. The special master stated:

In essence, the decision to reconfigure the ponds was a decision that places the costs of these changes on the defendants. The defendants are responsible only for that portion of the repairs required to remove the silt from the lake. The defendants are being asked to underwrite the cost of reconfiguring the lakes, while in reality, they should be liable only for the cost of the silt removal.

As noted above, findings by the special master in which the chancellor concurs generally are deemed conclusive. We reject this finding, however, based on two of the exceptions noted by the court in *Staggs v. Herff Motor Co.*, 390 S.W.2d 245, 251 (Tenn. 1965). First, while the amount of damages is an issue which may be determined as a finding of fact by the special master, the proper measure of damages is an issue of law not properly referred to a special master. We further note that the special master in this case was a professional engineer who is hardly qualified to opine on matters of liability under the law. Second, the measure of damages is based upon an error of law.

The measure of damages in a temporary nuisance case is the diminution in the value of the use and enjoyment of the property. *Pate v. City of Martin*, 614 S.W.2d 46, 48 (Tenn. 1981). In circumstances such as those present here, where the property subject to the nuisance is rental property, the amount of damages generally is the extent to which the rental value is diminished as a result of the nuisance. *Id.* The correct measure of damages in this case, therefore, is neither the cost to remove the silt, as assert by the special master, nor the cost to reconfigure the ponds, as sought by Mid-America. Rather, it is the value of the loss of the use enjoyment of the property as reflected by the loss in the rental value. In its complaint, Mid-America asserts that it lost rental revenue due to the damage caused by the siltation of the ponds. We accordingly reverse the trial court on the issue of the measure of damages and remand for further proceedings.

### *Conclusion*

In light of the foregoing, summary judgment based on the statute of limitations is reversed. The findings of the special master as concurred in by the trial court regarding the allocation of fault is affirmed. The trial court's determination that the measure of damages is the cost to remove the siltation from the ponds on Mid-America's property is reversed. The measure of damages in an action arising from temporary nuisance is the diminution of the value of the use and enjoyment of the property which, in this case, is determined by the loss of rental value. This case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees, Country Walk Partners, Paragon Properties, LLC, and Acuff Enterprises, Inc. d/b/a Scott Contractors and Scott Contractors, Inc.

_____
DAVID R. FARMER, JUDGE

-6-