**Richard G. DOUGLAS and Deanne M. Douglas, Plaintiffs,**

**v.**

**Gerald WILLIAMS, Goldome Credit Corporation, a Delaware Corporation, James E. Sanders, and Jerry Griffin, Defendants,**

**GOLDOME CREDIT CORPORATION, a Delaware corporation, Cross–Plaintiff/Appellant,**

**v.**

**James E. SANDERS, Cross–Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 26, 1993.

Application for Permission to Appeal Dismissed by Supreme Court May 24, 1993.

Petition to Rehear Granted and Application Denied by Supreme Court June 28, 1993.

Gary D. Copas, Lebanon, for cross-plaintiff/appellant.

James R. Thompson, Thompson & Thompson, Fayetteville, for cross-defendant/appellee.

## OPINION

TODD, Presiding Judge.

The cross-plaintiff, Goldome Credit Corporation, has appealed from a summary judgment dismissing its cross-claim against the cross-defendant, James E. Sanders. The summary judgment also dismissed the claims of the captioned plaintiffs against Sanders, but the captioned plaintiffs have not appealed from this part of the judgment. Other issues in the case remain unresolved, but the Trial Judge expressly directed entry of the summary judgment as a final judgment as provided by T.R.C.P. Rule 54.02.

Only the cross-plaintiff/appellant, Goldome and cross-defendant/appellee, Sanders, are involved in this appeal.

On August 13, 1990, Goldome filed its cross-claim stating that, on June 13, 1984, Sanders rendered a false surveyor's report to The Security Title Guarantee Corp. regarding the location of improvements on certain property, that "Sanders has at no time recorded on the plat any survey," and that Goldome relied upon said report to its damage.

The Surveyor's Report exhibited to the complaint states in pertinent part as follows:

> This is to certify that on 4–17–1984, I made an accurate survey of the premises (illegible word) in the name of Allan Graves situated at Petersburg, Lincoln County, Tennessee, known as street numbers Chestnut Ridge Road and shown on the accompanying survey entitled Prop. of Allan Graves.
>
> I made a careful inspection of said premises and of the buildings located thereon at the time of making such survey, and again on 6–13, 1984, and at the time of such latter inspection I found to be (illegible) of said premises as owner.
>
> I further certify as to existence or non-existence of the following at the time of my inspection:
>
> . . . .
>
> 6. Are there any indications of building construction, alterations or repairs within recent months? *Construction begun on house.*
>
> . . . .
>
> Dated at Pulaski, Tenn. 13th day of June, 1984.
>
> James E. Sanders, T.R.L.S.

On October 5, 1990, Sanders answered, denying that he was ever employed to ascertain the final location of the improvements under construction, denying negligence, and asserting the statute of limita-

tions, T.C.A. § 28–3–114 which reads in pertinent part as follows:

**Actions for faulty surveying—Limitation of action.**—(a) All actions to recover damages against any person engaged in the practice of surveying for any deficiency, defect, omission, error or miscalculation shall be brought within four (4) years from the date the survey is recorded on the plat. Any such action not instituted within this four (4) year period shall be forever barred. The cause of action in such cases shall accrue when the services are performed.

The motion also relied upon an affidavit of Jackie Blake attached as Exhibit "C," which states that a survey was made on April 16, 1984, and a plat of the survey was "drafted" the following day, April 17, 1984. The affidavit further states that, at the time of the survey, stakes and batter boards for a 22′ × 44′ house were in place on the lot in question.

The deposition of Jackie Blake states that he has been an employee of Sanders for 6 or 7 years; that he participated in a construction loan survey evidenced by a surveyor's drawing or plat dated April 17, 1984; that stakes were in place marking the corners of a proposed house.

The deposition of Sanders states that he was requested by Magic Homes to survey a lot for Allan W. Graves; that he sent his crew to do the job in the Spring of 1984; and that he (Sanders) checked the Survey Report and signed a schematic drawing of the survey showing where the house was "spotted." The witness further testified:

A. See, that is a plot plan. Where the foul-up was they should have got a loan closing survey.

Q. What did you say again?

A. A loan closing survey.

Q. What is a loan closing survey?

A. A loan closing survey that is when everything is finished and this mortgage company is the only one I have ever heard of that don't require it.

Q. Why do you say they do not require it?

A. They never did ask for it unless somebody else made it. That's where your problem is.

Sanders also testified that Magic Homes paid him for surveying the lot and "spotting" the house on the lot with wooden stakes; that somebody in his office signed the June 13, 1984 Surveyor's Report showing "construction begun," that "you can make a "Surveyor's Report" every time you go out there, and it don't mean nothing;" and that he (Sanders) conducted another survey in 1989, which indicated that a house larger than that platted in 1984 had been built in a different location from that platted in 1984.

Goldome filed a lengthy, unsworn "Memorandum in Opposition to Motion for Summary Judgment," which relied upon the following:

Exhibit "B" to Goldome's third-party complaint against Magic Home, which is the June 13, 1984, report.

The Surveyor's Report (Exhibit "A") hereto (said exhibit is the same June 13, 1984, report).

Deposition of Sanders admitting execution of the report.

As stated, the Trial Court entered summary judgment for Sanders. The judgment does not state a specific ground for the action of the Trial Court, but states simply that, "said defendant, J.E. Sanders, is entitled to judgment as a matter of law on all grounds set forth in said defendant's motion for summary judgment."

The appellant, Goldome, presents the issues in the following form:

1. Whether the Trial Court erred in finding that as a matter of law Goldome's cross-claim against Sanders is barred by the statute of limitation under T.C.A. § 28–3–114.

2. Whether the Trial Court erred in finding that as a matter of law the acts and omissions of Sanders in the preparation and execution of the subject "Surveyor's Report" do not show a cause of action in tort.

3. Whether the Trial Court erred in finding that there is no genuine issue as

to any material fact in the cross-claim of Goldome against Sanders.

4. Whether the Trial Court erred in granting summary judgment to Sanders.

█ It is clear that the cross-action of Goldome filed on August 13, 1990, was not filed within four years after the date of the survey plat on April 17, 1984, or of the Surveyor's Report dated June 13, 1984.

Nevertheless, Goldome argues that the statute of limitations, quoted above, does not begin to run until "the survey is recorded on the plat." Goldome conceives that the phrase, "recorded on the plat" means "recorded in the County Register's office." This Court does not agree.

The statute refers to "faulty surveying." Surveying is a derivative of the verb "survey" which means, "of land, to ascertain corners, boundaries, divisions, with distances and directions...." *Black's Law Dictionary*, Fourth Ed., p. 1614.

The noun "survey" means "the process by which a parcel of land is measured and its contents ascertained; also a statement of the result of such survey, with the courses and distances and the quantity of the land." Ibid. p. 1615.

A "plat" or "plot" is "a map, or representation on paper, of a piece of land subdivided into lots, ... usually drawn to scale." Ibid. p. 1309.

The verb, "record," means "to commit to writing, to printing, to inscription, or the like, to make an official note of, to write, transcribe, or enter in a book or on parchment, for the purpose of preserving authentic evidence of,...." Ibid. p. 1437.

In common legal parlance, the verb, "record," does include the meaning of inscribing or imprinting upon an official record, such as that of a Register's office. However, such is not the only use of the word in legal procedure. A court stenographer records testimony by machine and shorthand. An officer records his return upon a process, and a clerk of court records the names of jurors who report for jury service.

The meaning of the word, "record," must be derived from the context in which it is used.

It is common knowledge that, except for subdivisions, plats of individual tracts are seldom recorded in a County Register's office. In respect to the unrecorded plats, the statute of limitations would be rendered meaningless under the definition urged by Goldome, for, if a plat were never recorded, the statute would never run.

This Court holds that, as used in T.C.A. § 28-3-114, the words, "recorded on the plat" mean the production of some drawing or written instrument evidencing the results of a survey. It appears that the legislative intent was to provide that the statute did not begin to run until some written or drafted statement was produced by the surveyor.

█ In the present record, the only survey occurred on April 16, 1984, and it was "recorded on the plat" on April 17, 1984, more than four years before the filing of the subject action and any liability thereon is barred by the statute.

█ If it should be said that the "Survey Report" dated June 13, 1984, was a recording of a survey, then the "Report" shows on its face a date more than four years prior to the filing of the cross-action by Goldome against Sanders. Thus, any liability arising from any error in the Survey Report is barred by the statute of limitations.

The foregoing renders unnecessary any discussion of the other issues presented by appellant.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant, Goldome. The cause is remanded for further proceedings.

Affirmed and Remanded.

CANTRELL and KOCH, JJ., concur.